### In re HOWE et al.

#### (District Court, D. Massachusetts. January 6, 1916.)

#### No. 21677.

PARTNERSHIP ☞20—CREATION OF PARTNERSHIP BY OPERATION OF LAW.

H. arranged to take over the management of a hotel, but was financially unable to purchase from the former owners of the hotel their right, under the rules of the city licensing board, to nominate the person to whom a liquor license should be issued. At his request P. bought the license and allowed H. to use it, upon paying interest on the cost price and with the understanding that he would sell it to H. whenever H. was able to pay such price. The license was issued in the name of P. and H., "doing business as H.," but P. had in fact no interest in the business and received no payments therefrom, except from the payments of interest. He did not appear on its books as a partner, and no one extended credit to the hotel on the assumption that he was a partner, or in reliance on his name being on the license. *Held*, that he did not become a partner by operation of law, since a partnership arises in that way only where all the necessary incidents of one are found to exist, among which are a joint adventure and a share or interest in the profits as profits.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 6, 7; Dec. Dig. ☞20.]

In Bankruptcy. In the matter of Francis Howe and Arthur P. Pearce, alleged bankrupts. Petition dismissed.

Barton & Harding, of Boston, Mass., for petitioning creditors.
Henry D. Crowley, of Boston, Mass., for Pearce.

MORTON, District Judge. The question presented is whether Pearce was a partner of Howe in the business of the Hotel Nottingham, so as to make him responsible with Howe for its debts. Both Pearce and Howe deny that any such partnership existed. The facts are fully stated in the report of Mr. Referee Darling, to whom the case was referred to state the facts, and I shall only mention such of them as seem to me specially significant. I agree with and confirm the referee's findings, except as I shall otherwise indicate.

When Howe arranged to take over the hotel, he was confronted with the necessity of procuring a liquor license for it. The former owners (Gay Bros.) had had one. Owing to the fact that the number of such licenses which can be issued in the city of Boston is limited by law, and is less than the demand for them, the right to a liquor license has a value apart from the license itself. The holder of a license is treated by the licensing board as having, generally speaking, a right to a renewal of it, as long as he properly conducts the business, or, if he does not wish a renewal, the right to sell the license; i. e., to nominate the person to whom, if suitable, it will be issued by the licensing board upon the former holder's request.

Gay Bros. valued this right in the liquor license at $12,000, and they were willing, upon receiving that sum, to nominate such person as might be satisfactory to Howe for it. Howe was not able himself to raise the money. He got Pearce to buy the license and allow him

to use it upon paying Pearce interest at 5 per cent. on the $12,000, which the license cost. Howe, of course, also paid the annual fee of $3,000 to the city of Boston. The license was Pearce's property, lent by him to Howe, as an act of friendship for use at the hotel, and with the understanding that he would sell it to Howe whenever the latter was able to pay him $12,000. It was issued in the name of Pearce & Howe, "doing business as Francis Howe."

In the actual business carried on under the license, Pearce had, as the referee finds, no interest whatever, and he had no interest of any kind in any other part of the business of the Hotel Nottingham. He had guaranteed the performance of the lease by Howe—i. e., the payment of the rent, etc.; but he did this, as the referee finds, without consideration, and as a further act of friendship to Howe, with whom he was on intimate terms. Pearce took no part in the management of the hotel, or of the liquor business connected with it. He did not appear on the books of the hotel as a partner, and the only payments made to him from money received there were those for interest upon the sum which he had paid for the license.

The referee finds:

That "there is no evidence in this case that any one extended credit to the Hotel Nottingham on the assumption that Pearce was a partner, or that in giving credit any one relied on Pearce's name being on the license" (Referee's Report, p. 10), and that "there never was an intention on the part of either Pearce or Howe to become partners, and that in the absence of such intention only joint contribution and sharing in profits or losses could make them such" (Referee's Report, p. 17).

The referee concludes:

"I am satisfied that Pearce intended to be a backer only; but, taking into account all the circumstances connected with the way in which this business and license of Gay Bros. was sold to these two parties and still kept together," which were in substance as above stated, "I must hold that it was a joint enterprise, to which both Pearce and Howe made contributions. Pearce contributed a license worth $12,000, and at the time of the filing of the petition worth at least $16,000." (Referee's Report, p. 18.) "Even disregarding any profit by enhanced value, or the unsatisfactory accounting for the $10 per day items, which I am convinced may have been in some unexplained way, at least at the outset, connected with this license transaction, I find enough to hold that there was a sharing in the profits of this business by Pearce, which, together with his contribution thereto, warrant the finding that he was in law a partner of Howe in this enterprise, and this notwithstanding the fact that the only evidence of any payments of money, or agreement to pay money, to Pearce, were the payments of the $50 per month carried as interest on the ledger.

"If, however, I am in error as to the legal effect of the license situation, and have given undue weight to the lack of agreement between the parties in this case, as taking it out of a class of cases like Estabrook v. Woods, in which it was possible to interpret a specific agreement, and, as to the party receiving a part of the profits of the business conducted by the other, it could be ascertained 'whether he has a share or interest in the profits as profits, or whether his interest in profits is merely a measure of his compensation for something that he does or furnishes under a contract' (Knowlton, C. J., Estabrook v. Woods, infra), then I find there has been a failure on the part of the petitioners to sustain the burden of showing a partnership, and there is not evidence sufficient to warrant the finding that Pearce and Howe were partners." (Referee's Report, pp. 19, 20.)

At the time when Howe took over the Hotel Nottingham and started in business there, it is clear that Pearce had no interest in the general business of the hotel. He did not, at the outset, "contribute" a license to a joint enterprise in which he was embarking with Howe. If the learned referee intended to find or rule to the contrary, it seems to me that he was plainly in error in so doing. As to the receipts from the business, Pearce had no right or interest in them as they accrued, whether they came from the rooms, from the restaurant, or from the bar; they belonged to Howe, and to Howe alone. This I understand to have been found by the learned referee; but, whether found by him or not, it is clearly the fact. In view of it, the finding or ruling that there was a "sharing of profits" cannot, I think, be supported. No change in the relations between Pearce and Howe in the important particulars above referred to is found to have taken place after the beginning of the business.

The question is to be determined in accordance with the law of Massachusetts. In Estabrook v. Woods, 192 Mass. 499, 78 N. E. 538, it was held, on facts at least as strong against the alleged partner as those here, that no partnership was created by operation of law. The learned referee was of opinion that Estabrook v. Woods was distinguishable, because "in that case there was a written agreement clearly setting forth the relationship between the parties," which, being established, controlled and overthrew the natural inference of partnership which otherwise would have followed from the facts shown; while here, if I understand his distinction correctly, the parties, having co-operated in a business enterprise under the circumstances stated, and having failed to provide explicitly that they should not be partners, had therefore become so as a matter of law. But a partnership arises in that way only where all the necessary incidents of one are found to exist. Among those are a joint adventure, and "a share or interest in the profits as profits" by the person sought to be charged, neither of which existed in this case.

It seems to me that the true relations of Pearce and Howe to each other and to the business in question are, upon the evidence and findings, sufficiently clear to be acted upon, and that Estabrook v. Woods is in point and is decisive.

Considering that Pearce had no interest in any property used at the Hotel Nottingham, except the liquor license (as to which all that he did was to exercise his right of nomination to a license in favor of Howe for use there), that he had no right to the receipts of the business as they came in, nor to exercise any control over the general conduct of the hotel, and that he never intended to be a partner in the enterprise, it cannot be ruled as a matter of law that his relation to the business of the Hotel Nottingham was such as to constitute him by operation of law a partner therein. I therefore am of opinion that the alternative finding of the learned referee should be adopted and confirmed, and that as to Pearce the petition should be dismissed.

As Howe was adjudicated on his voluntary petition filed on January 6, 1915, this petition should be dismissed as to him also.

Petition dismissed.