IN RE ESTATE OF WILLIAM J. PIVONKA.

JOSEPH F. PIVONKA et al., Appellants, v. ANNA PIVONKA et al., Appellees.

**WAR-RISK INSURANCE: Unaccumulated Installments—Power of Congress.** Congress has power, after the issuance of war-risk insurance, to provide that unaccumulated installments which exist at the time

of the death of the beneficiary shall be paid to the estate of the insured soldier.

**DESCENT AND DISTRIBUTION**: War-risk Insurance—Unaccumulated
2 **Installments.** Unaccumulated installments of war-risk insurance which exist at the time of the death of the beneficiary and which, under congressional act, are payable to the estate of the soldier, must be distributed, in case of intestacy, to the soldier's heirs *who exist at the time the soldier dies.*

Headnote 1:  5 C. J. p. 370 (Anno.)  Headnote 2:  5 C. J. p. 370 (Anno.)

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

DECEMBER 14, 1926.

Action to determine the proper distribution of the commuted value of installments of war-risk insurance collected by the administrator of the insured soldier's estate. The cause was submitted upon an agreed statement of facts, and the sole question upon appeal is in regard to the proper manner of distribution of said funds. The facts appear in the opinion.—*Affirmed.*

*Johnson, Donnelly & Lynch,* for appellants.

*S. V. Shonka,* for appellees.

FAVILLE, J.—William J. Pivonka, an unmarried man, entered the service of the United States during the World War, and obtained the war-risk insurance issued by the government, naming his father, Wencil Joseph Pivonka, as beneficiary. The soldier died in the military service on October 2, 1918. Thereafter, the war-risk bureau paid the monthly installments allotted under said certificate to his said father until the death of the latter, which occurred November 18, 1924. Under the certificate, a total of 240 monthly installments was payable, and the father, as beneficiary, received 74 of said payments. The remaining payments have been commuted and paid to the duly appointed administrator of the estate of said deceased soldier. The father of the soldier was twice married. By the first marriage, two children were born, the soldier and another son, by the name of Joseph F. Pivonka. By the second mar-

riage, another son, Robert, was born. The widow of the father and all of said children except the said soldier survive.

The case resolves itself into the determination of the question as to whether the said fund is to be distributed as of the date of the death of the soldier, October 2, 1918, or as of the date of the death of the father, which was November 18, 1924. Three situations present themselves: (1) If the fund vested in the father during his lifetime, it would pass to his heirs at his death, under the laws of distribution. (2) If distribution is to be made as of the date of the death of the soldier, the father, who was then living, would have been his sole heir, and would have been entitled to the entire proceeds; and, the father now being dead, the fund would descend to the heirs of the father, according to the laws of descent and distribution of this state. (3) If the fund vested in the estate of the decedent as of the date of the death of the beneficiary, the father, then it would descend to the heirs of the soldier, as determined at said date.

I. We first consider the question of the vesting of the entire fund in the beneficiary. We are of the opinion that the fund created by the war-risk insurance, and payable to the father, as beneficiary, in certain installments, did not vest a title to said fund in the beneficiary so that the unaccrued installments passed to the estate of the beneficiary. *White v. United States* (U. S.), 46 Sup. Ct. Rep. 274, 70 L. Ed. ——; *Helmholz v. Horst,* 294 Fed. 417; *Cassarello v. United States,* 279 Fed. 396; *Gilman v. United States,* 294 Fed. 422, affirming 290 Fed. 614; *Salzer v. United States,* 300 Fed. 764. The Act of Congress of March 4, 1925, amended the War Veterans' Act, and among other things provided:

"If the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments * * * there shall be paid *to the estate of the insured* the present value of the monthly installments thereafter payable." 43 Statutes at Large 1310.

Although this provision of the statute was enacted subsequently to the issuance of the war-risk insurance, it was within the power of Congress to amend the act and provide for the disposition of the unaccumulated installments. The first named beneficiary had no such vested right therein as to prevent the

change of beneficiary as to unaccumulated installments by the acts of Congress. *White v. United States,* supra.

II. The unaccumulated installments, therefore, by virtue of the statute, became payable, upon the death of the beneficiary named, to the "estate of the insured," and the administrator

2. DESCENT AND DISTRIBUTION: war-risk insurance: unaccumulated installments.

of said estate properly collected the same. The question then is with regard to the manner of the distribution of the said fund as a part of the estate of said decedent. The question as to whether the distribution in such an event is to be made as of the date of the death of the decedent or as of the date of the death of the beneficiary has not been determined by any court of last resort, so far as we are advised. There is force in the argument that the intent of Congress was to make a substitution of beneficiaries as of the date of the death of the beneficiary, and that it is the heirs of the deceased soldier as *then* ascertained, who step into the shoes of the first beneficiary, that take the installments from and after the date of the death of that beneficiary, as though the soldier himself had died at said date, and his heirs had *then* been ascertained. We are constrained to hold, however, that the intent of Congress is not to be so interpreted, and that the effect of the amendment to the statute is not to be so construed. "The estate of the insured" came into being as the estate of a deceased person instantly upon the death of such deceased person. The heirs of a decedent are, under the laws of this state, to be determined by ascertaining upon whom the law casts the estate immediately upon the death of the ancestor. *Johnson v. Bodine,* 108 Iowa 594; *Mitchell v. Vest,* 157 Iowa 336; *Christe v. Chicago, R. I. & P. R. Co.,* 104 Iowa 707. Whether or not the estate of the soldier was in process of administration prior to the death of the beneficiary is quite immaterial. Under the laws of descent and distribution in this state, the persons entitled to a decedent's estate, who, in case of intestacy, are his heirs, are to be determined as of the time of decedent's death. This is the only time recognized under the law for the purpose of ascertaining heirship. Congress undoubtedly had the power to have made disposition of the uncollected installments of war-risk insurance upon the death of the first named beneficiary. It did so by providing that, upon the death of said beneficiary,

the unaccumulated installments should be paid to the estate of the deceased soldier. It would, therefore, be disposed of as assets of the estate of said decedent, and as of the date of the death of said decedent. The heirs of said decedent entitled to said fund are to be ascertained at no other date than the date of the death of the soldier. This fixes a certain and inflexible guide for ascertaining heirship, and one that we have recognized as thoroughly established in the law. This being true, the distribution of the assets coming into the hands of the administrator of the estate of said decedent must be made by determining the heirs of the said decedent as of the date of the death of the said soldier. The decree of the district court was in accord with our conclusions as herein announced, and it is therefore ordered—*Affirmed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.