*90
 
 Jones, J.
 

 The sole question for determination is whether the course of descent of the fund in controversy is to be determined and the fund distributed as of 'the date of the death of the beneficiary, William Ross Palmer (October 11, 1924), as held by the common pleas court, or as of the date of Basil’s death (July 18, 1918), as held by the Court of Appeals.
 

 This question only becomes important in view of the claim that the Ohio statute controlling the descent of personal property was materially changed between the years 1918 and 1924. The departmental officer of the federal government paid to the administrator of Basil the present value balance of the insurance then due, reciting that, since Basil was “insured by the United States under the Act of Congress of October 6, 1917, as amended by the Act of March 4, 1925,” such administrator was entitled to receive said sum of $7,570 in full settlement.
 

 It is conceded by the parties that the war risk insurance in question was a “renewable term insurance.” Under our federal legislation the balance of the unpaid installments did not vest in the beneficiary, nor in the beneficiary’s heirs at his death. The government could designate, by proper legislation, a new class of beneficiaries to whom such installments might be paid.
 
 White
 
 v.
 
 United States,
 
 270 U. S., 175, 46 S. Ct., 274, 70 L. Ed., 530. In that case an American soldier took out war risk insurance on June 1, 1918, and died on October 4, 1918. He had designated his mother as a beneficiary, but at the same time, by a letter established as his will, he also designated an aunt as a bene
 
 *91
 
 ficiary, who should receive one-half of the amount due at his death. At the time of the aunt’s designation there was no federal statute including aunts among the permitted class of beneficiaries. However, on December 24, 1919 (41 Stat., 371), federal legislation was enacted enlarging the permitted class so as to include aunts. After this later legislation the mother filed suit to establish her claim to the whole of the unpaid installments, contending that the Act of 1919 was retroactive, and that it deprived her of property without due process of law. It was urged in her behalf that the mother’s interest had become vested at her son’s death, and could not be defeated by later legislation which had extended the benefit to aunts, in violation of her contractual rights under the certificate of insurance. The Supreme Court of the United States, Mr. Justice Holmes delivering the opinion, said (page 180 [46 S. Ct., 275]):
 

 “The certificate of insurance provided in terms that it should be ‘subject in all respects to the provisions of such Act [of 1917], of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract. ’ These words must be taken to embrace changes in the law no less than changes in the regulations.”
 

 The Supreme Court held that, while the insurance was in the nature of a contract, it was not entered into by the United States for gain, and that under the nature of the plan adopted by the federal government the relationship between the
 
 *92
 
 holder and the government was one of “benevolence established by the government at considerable cost to itself for the soldier’s good. * * • If the soldier was willing to put himself into the government’s hands to that extent no one else could complain. The only relations of contract were between the government and him. White’s mother’s interest at his death was vested only so far as he and the government had made it so, and was subject to any conditions upon which they might agree. They did agree to terms that cut her rights down to one-half. She is a volunteer and she cannot claim more.” The Supreme Court held that there was no constitutional inhibition preventing Congress from enacting later provisions which would include the aunt as one of the beneficiaries in the permitted class, to whom awards of insurance should be paid.
 

 The sole question then remaining is whether the balance of the insurance fund should be paid to those who are entitled to the same under our statutes of descent and distribution existing at the time of Basil’s death, or under the later statutes, in force at the time of William Boss Palmer’s death.
 

 Both parties concede that the World War Veterans Act, amendatory of former acts, and approved March 4, 1925 (43 Stats, at L., 1302), relating to the distribution of this fund, applies. Section 303 of the act (as so amended [Comp. Stats., Section 9127^2-303]) expressly provides that that section “shall be deemed to be in effect as of October 6, 1917.” The pertinent provisions of the act are as follows:
 

 “If the designated beneficiary *
 
 * *
 
 sur
 
 *93
 
 vives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award.”
 

 It will therefore be noted that the act is not only made effective as of October 6, 1917, but provides that the present value of the monthly installments, thereafter payable, shall be paid “to the estate of the insured.” So far as this record discloses, the dead soldier had no estate or property other than the balance of the insurance fund in question. The requirement of the act is specific and plain; that is, that the fund should be paid to the soldier’s estate without any limitation. It nowhere says "that it shall be paid to the estate of the insured to be distributed as of the date of the death of the beneficiary. All authorities agree that the distributees of an estate take it as of the date of the death of the decedent. This is the principle announced in
 
 Sommers
 
 v.
 
 Boyd, Treas.,
 
 48 Ohio St., 648, 29 N. E., 497, wherein the syllabus reads:
 

 “When administration is granted upon the estate of a deceased ward, the assets vest immediately in the administrator whose title, by relation, dates back to the time of the decease.”
 

 This rule of descent is carried into the syllabus of
 
 McBride, Adm’r.,
 
 v.
 
 Vance,
 
 73 Ohio St., 258, 76 N. E., 938, 112 Am. St. Rep., 723, 4 Ann. Cas., 197.
 

 The question whether the estate’s interest in the fund after the death of the beneficiary was vested or contingent is academic, for the obvious reason
 
 *94
 
 that the act of Congress definitely placed the fund in the decedent’s estate. Under the Act of March 4, 1925, there always remained the contingency that Basil’s estate would secure whatever remained of the insurance after the beneficiary’s death. The other view would connote a possibility of several periods of distribution of Basil’s estate. For instance, had Basil in fact designated several equal beneficiaries there would be a possibility that there would arise several periods of distribution, depending upon the survivorship of each. Had Congress intended such a result it would have provided for such a situation instead of specifically providing that the present value of the monthly installments thereafter payable should “be paid to the estate of the insured.”
 

 While the exact question we have under consideration was not there determined, the Supreme Court of Wisconsin in
 
 Singer
 
 v.
 
 Tikalsky,
 
 213 N. W., 479, decided last April, evidently construed the Act of March 4, 1925, as we do. In the course of the opinion it is said:
 

 “Here the language of the act is perfectly plain —the remainder of the fund is to be paid to the estate of the deceased.. Hence there is no room for the application of rules of construction * * *. The whole amount of the policy not having been paid to the beneficiary, the estate of the deceased was augmented by the present worth of future payments. When this sum was paid to the administrator under the law, it must be distributed to his heirs as of the date of his death.”
 

 We therefore arrive at the conclusion that the lump sum representing the present value of month
 
 *95
 
 ly installments thereafter payable was properly paid by the federal government to the administrator of Basil, and that the same should, in case of intestacy, be distributed to those who are entitled to his personal estate under the law as it existed at the time of Basil’s death.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day and Matthias, JJ., concur.
 

 Allen, J., dissents.