384

Probate Court of Auglaize County.

IN RE ESTATE OF ROSCOE LEWIS.

Decided October 17, 1930.

COFFIN, J.

Roscoe Lewis, a soldier in the service of the United States, died intestate on November 26th, 1918, at Camp Dix, New Jersey, leaving a war risk insurance policy in the sum of $10,000.00 on the face of which Lottie M. Lewis, the mother of the now deceased soldier, was made the beneficiary.

For a period from the date of the death of the soldier to January 12th, 1930, the date of the death of Lottie M. Lewis, the mother of said deceased soldier, she received the monthly installments due and payable on said war risk insurance policy.

Jenks Lewis, the father of said deceased soldier, Roscoe Lewis, died on June 4th, 1929.

Lottie Van Horn Lewis, the mother of Roscoe Lewis, was previously married to a man named DeFord. Mr. DeFord died leaving as the issue of this marriage, Bessie DeFord Schierenbeck. Jenks Lewis, the father of Roscoe Lewis, was married previously to his marriage to Lottie Van Horn DeFord. The first wife of Jenks Lewis died leaving as issue from this marriage, the following children who survive Roscoe Lewis: Charles Lewis; Mel

Lewis; Josephine Lewis; Bertha Lewis Hesse; Bessie Lewis Oman. Two children from this marriage, Haley Lewis Kelly and Ora Lewis Lemunyon, died before the war, previous to the death of Roscoe Lewis.

On June 26th, 1894, Jenks Lewis and Lottie Van Horn DeFord were married. To this union were born two children, Roscoe Lewis, the deceased soldier and Mary Lewis Adams, the sole surviving sister of the whole blood.

At the date of the death of Lottie M. Lewis, the beneficiary of this insurance policy, there remained, as computed by the U. S. Veteran's Bureau, the sum of $5,264.00, the present value of the unpaid balance under the terms of said policy due and payable in a lump sum at the death of the beneficiary.

On March 5th, 1930, Mary Lewis Adams was appointed administratrix of the estate of Roscoe Lewis, deceased, and on a ruling by the U. S. Veteran's Bureau, the unpaid balance due under the war risk insurance policy issued on the life of Roscoe Lewis, at the date of the death of Lottie M. Lewis, the mother and beneficiary, was due and payable to the estate of the deceased soldier.

The sum of $5,264.00 was received by the administratrix of the estate of Roscoe Lewis. In her final account, the administratrix charges herself with this amount and deducts therefrom the sum of $19.55 to cover court costs in the administration of the deceased soldier's estate, leaving a net balance of $5,244.45 which sum in her account of final distribution, Mary Lewis Adams, administratrix of the estate of Roscoe Lewis, deceased, paid to Mary Lewis Adams, the only surviving sister of the full blood of the deceased soldier.

To the account of final distribution of the administratrix of the estate of Roscoe Lewis, deceased, counsel in behalf of C. E. Lewis, Mel Lewis, Bertha Hesse, Bessie Schierenbeck and Phoena Kelly, brothers and sisters of the half blood of Roscoe Lewis, deceased, on May 6th, 1930, filed exceptions.

First: On the grounds that the funds shown in the final account of distribution of said administratrix are funds derived from war risk insurance, being a balance

of the policy of war risk insurance as carried by said Roscoe Lewis, deceased, and issued to him in his lifetime.

Second: That under and by virtue of the war risk insurance act, of the United States of America, these exceptors are brothers and sisters of the deceased Roscoe Lewis, and as such are legally entitled to share equally with the brothers and sisters of the full blood of the said decedent, in the distribution of said estate. Alleging that said war risk act provides among other things pertaining to said subject as follows: "The terms "brother" and "sister" include brothers and sisters of the half blood as well as those of the whole blood, step-brothers and step-sisters and brothers and sisters through adoption."

Citing Barnes Federal Code, Chap. 5, Part of Section 10273, Articles 2, 3 and 4 of the Act, Subdivision No. 5.

Citations produced in support of contention at time of hearing by Mr. B. A. Myers, counsel for the brothers and sisters of the half-blood exceptors:

*Palmer* v. *Mitchell*, 117 Ohio St., 87; *Waltz* v. *Waltz*, 121 Ohio St., Page 46; *E. White* v. *United States*, 70 Law Edition, U. S. Supreme Court, Volume 270, of the Regular Edition; U. S. Code, 1928 Title 38, Section 424, "Pensions, Bonuses and Veteran's Relief;" *Woodworth, Exrx.* v. *Tepper*, Amer. Law Reports; *Stelzer* case, decided by Judge Johnson, Mercer county, Allen county Probate Court decision.

Citations produced by Theo. H. Tangeman, counsel for Mary Lewis Adams, administratrix:

U. S. Code, Title 38, Section 512, Part 3 and Section 514; *Cross Estate,* Supreme Court decisions, State of Washington, Volume 278, Pacific Reporter, page 414; *Palmer* v. *Mitchell.* 117 Ohio St., 87; 55 American Law Reporter, page 566, 578, 580, 594, 597, 599; *Smallwood* case, 30 Southwestern, page 573 (1927).

As a basis for its opinion on the case in point, the court will quote rather extensively from citations offered as well as sundry decisions rendered by various courts on cases in point.

*Palmer* v. *Mitchell*, 117 O. S., 87. War risk insurance. Congress empowered to change class of beneficiaries to whom insurance payable upon soldier's death; beneficiaries

without vested interest preventing Congress from enacting later legislation; balance due at beneficiaries death to Insured's estate; designated beneficiaries survived by soldier but died before all installments payable; present value of insurance policy due soldier's estate and distributed as at date of soldier's death.

From the opinion of Judge Jones, concurred in by Judges Marshall, Day and Matthias, Judge Allen dissenting, the following question is determined: Whether the unpaid balance due thereunder is to be distributed as at the date of the death of the beneficiary, Wm. Ross Palmer (Oct. 11, 1924), as held by the Common Pleas court, or as at the date of Basil's death (July 18, 1918) as held by the Court of Appeals. This question only becomes important in view of the fact that the Ohio statute controling the descent of personal property was materially changed between the years 1918 and 1924. The departmental officer of the Federal Government paid to the administrator of Basil's estate the present value of the share of the insurance then due, reciting that, since Basil was "insured by the United States under the act of Congress, October 6, 1917, as amended by the act of March 4, 1925," said administrator was entitled to receive said sum of $7,570.00 in full settlement. * * *

*Waltz* v. *Waltz*, 121 O. S., 22 and 23. The question at issue in this case applied to a widow's right to assign her interest and whether or not the unpaid installments to the beneficiaries can be assigned. And from the court's ruling in this case, we quote, "since the beneficiary in this case, Virgil B. Waltz, survived the insured soldier, but died prior to receiving all the remaining unpaid insurance installments, the present value of the insurance installments paid into the estate of the deceased soldier descended to the soldier's widow and it was the opinion of the court, that under the legislative inhibitions of Congress, pertaining to this class of War Risk Insurance, the widow's interest as an ultimate beneficiary in the unpaid installments was not assignable. *Palmer* v. *Mitchell, admr.,* 117 O. S., 87, 155 N. E., 187, 55 A. L. R., 566.

In the opinion, the Supreme Court further ruled that

a contingent interest in war risk insurance is not assignable. *White* v. *United States,* 70 Law Ed., U. S. C.

This case dealt directly with the right to change beneficiary and is not directly applicable in the case under consideration, due to the fact that no change of beneficiary was made by Roscoe Lewis, either in his war risk insurance policy or by will.

*Howard* v. *United States* (D. C.), 70 L. Ed. Under Section 13 of the war risk insurance act, as added by act of October 6, 1917, Section 2 (Comp. Stat. Section 514kk), the only basis upon which the district court shall have jurisdiction of an action on a policy of war risk insurance is where there has been a "disagreement" between the Bureau of War Risk Insurance and the plaintiff, and the petition should have alleged that there had been such a disagreement so as to show on its face jurisdiction. *Cassarello* v. *United States,* (D. C.), 271 Fed., 486, affirmed in (C. C. A. 3d.) 279 Fed., 396.

But a beneficiary cannot pass unaccrued installments of war risk insurance by will to his executor, but, as provided in the application and in a regulation issued pursuant to Paragraph 13 of Act (40 Stat. at L—Chap. 105, pp. 398, 399, Comp. Stat., par. 514 A) to which application made the policy subject, the remaining installments are payable to persons within the permitted class of beneficiary by will of the insured, or, in the absence of such will, to such persons as would, under the laws of the state of the residence of the insured, be entitled in case of intestacy, the right given by the insured to change the beneficiary without the consent of the latter negativing any idea of a vested right during the lifetime of the insured.

U. S. Code, Title 38, Part 1—General Sec. 424—Definition of words and phrases:

In Part 2 (compensation and treatment) ;

Part 3 (insurance) ;

Part 4 (vocational rehabilitation) of this Chapter, unless the context otherwise requires (Part 1-5) * * *.

Part 1-6th, "the terms 'brothers' and 'sisters' include brother and sister of the half-blood as well as those of the whole blood, step-brothers and step-sisters and brothers and sisters through adoption."

The controversy in this case pertains to paragraph 511, Sec. 3, "persons entitled to; amounts; time for application for; to whom presentable; expense of; premium rates";

This part of this paragraph bears directly on the contract between the government and the soldier, with reference to designating in the soldier's war risk insurance policy a beneficiary under the terms of the policy and reads as follows:

"The yearly renewable term insurance shall be payable. only to a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law, or sister-in-law or to any or all of them and also during total and permanent disability to the injured person.

"Where the beneficiary for yearly renewable term insurance at time of designation by the insured is within the permitted class of beneficiary and is the designated beneficiary at the time of the maturity of the insurance because of the death of the insured, such beneficiary shall be deemed to be within the permitted class even though the status of such beneficiary shall have been changed." *O'Quain* v. *United States* (D. C.—District Court of La., 28 F., 2d 350.)

In the absence of designation of beneficiary in the policy, the rights of an undesignated claimant must depend on the state law and, under the law of Louisiana held that a natural mother was not entitled to recover.

*Deeble's Estate* v. *Tepper*, 136 A. T. L. (Md.), 536. Where mother is beneficiary and she dies after father, unpaid installments pass to her representatives as against brothers and sisters of the insured, the mother being the sole heir under the Maryland statute as of the date of the insured's death.

*Ryan's Estate*, 222 N. Y. S., 253, money paid by the government to the (estate of the insured) is to be distributed according to the state law in view of the amendment of this section by Act, March 4, 1925.

*Grimer Estate*, 218 N. W. (Wis.), 437. Question of distribution of unpaid portion of the insured's money must be determined in the first instance by the U. S. Veteran's Bureau.

*Re Ryan* (1927), 129 Misc., 248, 222 N. Y. Supp., 253,

affirmed on the opinion of the Surrogate—1927, 220 App. Div., 835, 222 N. Y. Supp., 891.

The court said: "The uncles and aunts of the deceased claimed to be entitled to payments under the provisions of the world war insurance Act in 1919 and the amendments thereto. They asserted that the provisions of these statutes are applicable only to the relatives of the deceased soldier as defined by Congress. I hold that the fund must be paid to the estate of the widow. The sum was paid by the Government under the amendment of March 4, 1925, to the "estate of the insured," and that the persons entitled to share in same must be determined by our statute of distribution, as at the time of the decedent's death. The payment to the estate was made by the Government without any condition or limitation whatsoever. The language of the Federal statute is so clear and simple that no interpretation could be adopted other, than the words, "estate of the insured," mean that the fund is to be treated as any other asset of an estate, and paid over to the persons entitled under the New York Law of intestacy.

The contention of uncles and aunts * * * finds no support in that statute."

When the act was originally passed in 1917, Congress reserved the right to subject the contract of insurance to future amendments, and it was held in *White* v. *United States* (1924 D. C.), 299 Fed., 855, affirmed in 1926, 270 U. S., 175, 70 Law. Ed., 530, 46 Sup. Ct. Rep., 274, that retroactive legislation as to such insurance was valid even to the extent of taking away rights previously vested. So in this case, we are not concerned with the power of Congress to change the class of persons to whom the insurance might be paid on any theory that a previous statute may have prohibited it. * * *

That amendment (March 4, 1925) repealed the previous provisions of law, which directed payment to the next of kin of the insured, but limited the permitted class of beneficiaries to certain named relatives. * * *

The question of direct payment to any individual beneficiary rested solely with the Government, and any dispute with regard thereto was one for adjudication by the Fed-

eral courts. The Government has elected to ignore the individual beneficiary and has paid "to the estate." The local statutes, of New York, therefore, necessarily control the distribution of the estate, nor is it the function or within the power of the Surrogate to arbitrarily change the class of "next of kin" from those living at the date of the death of the decedent, or to destroy the rights of the widow or of her estate which accrued at the death of the insured.

*Re Singer*, 1927. (192 Wis., 524, 213 N. W., 479) the court said, "It is very vigorously argued, that, having in mind the purpose of the insurance for the protection of the insured and his dependents, that is the general rule, it should be held in this case, that the father, who is the only one who may be considered in any legal sense dependent, is entitled to the whole of the estate, because such was the intention of Congress. The intention of the law making power must be ascertained from the language used to express that intention, and it is only when the language used is uncertain, indefinite or ambiguous, that resort may be had to construction.

Here the language of the act is perfectly plain, the remainder of the fund is to be paid to the estate of the deceased. Hence there is no room for the application of rules of construction. The intent of the law making power is that which is found clearly explained in the language used in the act. * * *

Immediately upon the death of the insured, the title to his estate vests in his heirs. * * *

### FINDINGS.

So far as this court is advised or has been able to determine, the only case cited or found where distribution has been made contrary to the existing statutes of the state where the deceased soldier was resident, is the *Stelzer case* in the Probate Court of Mercer county.

In the case now before this court, the court finds on the evidence submitted, that Roscoe Lewis, a soldier in the service of the United States, died intestate on the 26th day of November, 1918, leaving a war risk insurance policy in the principal sum of $10,000.

The court further finds that Lottie M. Lewis, the mother of the deceased soldier and beneficiary under his war risk insurance policy was predeceased by Jenks J. Lewis, the father of the deceased soldier, and that Lottie M. Lewis, the beneficiary under the war risk insurance policy of Roscoe Lewis, drew installments due and payable thereunder until the date of her death, January 12, 1930.

The court further finds that the U. S. Veteran's Bureau has ruled that the unpaid balance of $5,264 was, at the date of the death of the beneficiary, due and payable to the estate of Roscoe Lewis, deceased. The court further finds that Roscoe Lewis was not survived by a child, the issue of his body, nor was he survived by a wife, and that under the laws of descent and distribution in effect at the date of the soldier's death, in the state of Ohio, of which state said Roscoe Lewis was a resident, his estate passes to his brothers and sisters of the whole blood or their legal representatives.

Exceptions to the Account of final distribution over-ruled and the account ordered approved.