No. 12,328.

ESTATE OF McQUADE.
GARLAND *v.* ANDERSON.
(296 Pac. 1023)

Decided February 9, 1931. Rehearing denied March 2, 1931.

342

Mr. George E. Steinmetz, Mr. James T. Burke, Mr. James J. Roach, for plaintiff in error.

Mr. Clarence A. Brandenburg, Mr. Stanley C. Brandenburg, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

This writ of error is prosecuted to review a decree of heirship of the district court affirming a similar decree of the county court and involves rights arising under a certificate of insurance issued, pursuant to provisions of the federal war risk insurance law, to a soldier in the military service of the United States.

On June 28, 1918, Patrick J. McQuade, a soldier in the United States Army, applied for and was granted insurance under the war risk insurance act then in force. This law and the certificate issued thereunder provided: "* * * this insurance is granted under the authority of an Act * * * approved Oct. 6, 1917, and subject in all respects to the provisions of such Act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract."

Patrick McQuade, father of the insured, his sole heir at law and next of kin, was designated as beneficiary and became entitled to the amount of insurance in 240 equal

monthly installments upon the death of his son, who died September 22, 1918, intestate and unmarried. The father died intestate on September 12, 1924, leaving him surviving as his sole heir at law under the laws of Colorado, his widow, Cora L. McQuade, whom he had married on May 19, 1920. Monthly installments of the insurance were paid to the beneficiary, Patrick McQuade, until his death, whereupon the monthly payments ceased. Thereafter, the director of the United States Veterans' Bureau at Washington, notified Lillian Duzan, the daughter of Cora L. McQuade by a former marriage, who was acting for her mother, that ''there is $7,677.00 insurance due the estate of Patrick J. McQuade, deceased former soldier, payable in one lump sum for distribution to the heirs of Patrick J. McQuade, in accordance with the intestacy laws of Colorado.'' Thereafter, Lillian Duzan, now Mrs. Lillian D. Anderson, was appointed administratrix of the estate of Patrick J. McQuade, the deceased soldier, and on January 11, 1928, upon her application, there was paid to her as administratrix, the balance of insurance. The amount so received comprises all of the estate of Patrick J. McQuade sought to be distributed.

Patrick J. Garland, an uncle of deceased insured, filed a petition for the determination of heirship of Patrick J. McQuade, in which proceeding Cora L. McQuade intervened, claiming the entire fund in the hands of the administratrix as the sole heir at law, under the laws of Colorado, of the deceased beneficiary. Both the county and district courts awarded the funds in the hands of the administratrix to Cora L. McQuade.

It is the contention of Patrick J. Garland, petitioner and plaintiff in error, that the funds in the hands of the administratrix must be distributed under the federal statutes to the heirs of the deceased soldier within a certain permitted class of beneficiaries designated therein and that he and his sister, Rose Garland, uncle and aunt respectively of the deceased insured, being his sole survivors within this permitted class, should be awarded

said funds and that where once installments payable under the policy of yearly renewable term insurance have accrued and remain unpaid, no subsequent Act of Congress can divest a beneficiary of his right to those installments.

1. 40 Stat. at Large, Part 1, p. 409, section 402, adopted October 6, 1917, provides as to beneficiaries: "* * * shall be payable only to a spouse, child, grandchild, parent, brother or sister * * *. If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons, within the permitted class of beneficiaries as would under the laws of the State of the residence of the insured, be entitled to his personal property in case of intestacy. If no such person survive the insured, then there shall be paid to the estate of the insured an amount equal to the reserve value, if any, of the insurance at the time of his death.''

On December 24, 1919, 41 Stat. at Large, Part 1, p. 375 of the statute was amended as follows:

''Sec. 13. That the permitted class of beneficiaries for insurance as specified in section 402 of the War Risk Insurance Act is hereby enlarged so as to include, in addition to the persons therein enumerated, uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law of the insured. This section shall be deemed to be in effect as of October 6, 1917: * * *.

''Sec. 14. That if no person within the permitted class of beneficiaries survive the insured, then there shall be paid to the estate of the insured the monthly installments payable and applicable under the provisions of Article IV of the War Risk Insurance Act.

''Sec. 15. That if any person to whom such yearly renewable term insurance has been awarded dies, or his rights are otherwise terminated after the death of the insured, but before all of the two hundred and forty

monthly installments have been paid, then the monthly installments payable and applicable shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the State of residence of the insured, be entitled to his personal property in case of intestacy; and if the permitted class of beneficiaries be exhausted before all of the two hundred and forty monthly installments have been paid, then there shall be paid to the estate of the last surviving person within the permitted class the remaining unpaid monthly installments.''

On August 9, 1921, 42 Stat. at Large, Part 1, p. 156, section 26, Congress again provided: ''Sec. 407. If no person within the permitted class of beneficiaries survive the insured, then there shall be paid to the estate of the insured the monthly installments payable and applicable under the provisions of Article IV of the War Risk Insurance Act: * * *.'' and again on June 7, 1924, 43 Stat. at Large, Part 1, p. 625, Congress provided, section 303: ''If no person within the permitted class of beneficiaries survive the insured, or if before the completion of payments the beneficiary or beneficiaries shall die and there be no surviving person within said permitted class, then there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable under the provisions of this title: * * *.''

Thereafter and on March 4, 1925, 43 Stat. at Large, Part 1, p. 1310, sec. 14, section 303 of said Act of 1924 was amended as follows: ''Sec. 303. If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of

date of last payment made under any existing award; provided, That all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this Act shall continue until the death of the person receiving such payments, or until he forfeits same under the provisions of this Act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance so awarded to such person; provided further, That no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment: * * *. This section shall be deemed to be in effect as of October 6, 1917.''

On January 11, 1928, when the balance of insurance was paid to the administratrix of the estate of the deceased soldier, the provisions of the law of 1925, above quoted, were in effect and had been substituted for all previous conflicting enactments. While these previous acts carried a provision that in case of the death of the beneficiary the money could only go to some surviving person within a limited class, the 1925 act eliminates such provision entirely and provides specifically that where a beneficiary dies after the death of the insured, any remaining moneys unpaid under the certificate of insurance shall go to the estate of the insured. In Colorado, upon the death of an intestate, his property vests instantly in his heirs at law, subject to debts and administration charges. Patrick J. McQuade, the insured soldier, died intestate, leaving him surviving as his sole and only heir at law, his father, Patrick McQuade, the beneficiary designated in the certificate of insurance, who was paid the monthly installments due thereunder until his death. Upon his death, under the provisions of section 303, law of 1925, supra, the balance due under the policy was payable to the estate of the insured, and Patrick McQuade, being the sole heir at law of his intestate son, his estate

was entitled to the proceeds thereof. He having died intestate, his sole and only heir at law, his wife, Cora L. McQuade, the defendant in error, as such now becomes entitled to the balance of insurance.

Our decision of the question involved herein, which is merely one of statutory construction, is supported by the overwhelming weight of authority in other jurisdictions.

In *White v. United States*, 270 U. S. 175, 46 Sup. Ct. 274, 70 L. Ed. 530, decided March 1, 1926, it was held that a certificate of war risk insurance being subject to the future amendments, the beneficiaries therein had no vested rights thereunder. Mr. Justice Holmes, in expressing the opinion of the court, states at page 180: "The certificate of insurance provided in terms that it should be 'subject in all respects to the provisions of such Act [of 1917], of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract.' * * * The language is very broad and does not need precise discussion when the nature of the plan is remembered. The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it and the relation of the Government to them if not paternal was at least avuncular. It was a relation of benevolence established by the Government at considerable cost to itself for the soldier's good. It was a new experiment in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will. If the soldier was willing to put himself into the Government's hands to that extent no one else could complain. The only relations of contract were between the Government and him."

In New York, in the case of *In re Ryan's Estate*, 222 N. Y. S. 253, 220 App. Div., decided March 25, 1927, affirmed 222 N. Y. S. 891, the identical question was deter-

mined adversely to the claim of aunts and uncles of the insured, regardless of whether the distributees of the deceased insured were within the permitted class. The court states at page 254:

"The uncles and aunts of the decedent claim to be entitled to payment under the provisions of the World War Insurance Act of 1917 and the amendments thereo. * * *

"They assert that the provisions of these statutes permit payment only to the relatives of the deceased soldier as defined by Congress. I hold that the fund must be paid to the estate of the widow. The sum was paid by the government, under the amendment of March 4, 1925, to 'the estate of the insured,' and the persons entitled to share in it must be determined by our statute of distribution * * * as of the time of decedent's death. The payment to the estate was made by the government without any condition or limitation whatsoever. The language of the federal statute * * * is so clear and simple that no interpretation could be adopted, other than the words, 'estate of the insured' mean that the fund is to be treated as any other asset of an estate, and paid over to the persons entitled under the New York law of intestacy.

"The contention of the uncles and aunts * * * finds no support in that statute. When the act was originally passed in 1917, Congress reserved the right to subject the contract of insurance to all future amendments, and it was held in *White v. United States* (D. C.), 229 Fed. 855, that retroactive legislation as to such insurance was valid, even to the extent of taking away rights previously vested. So in this case we are not concerned with the power of Congress to change the class of persons to whom the insurance might be paid on any theory that a previous statute may have prohibited it * * *. That amendment repealed the previous provision of law which directed payment to the next of kin of the insured, but limited the permitted class of beneficiaries to certain named relatives. * * *

"The question of direct payment to any individual

beneficiary rested solely with the government, and any dispute with regard thereto was one for adjudication by the federal courts. The government has elected to ignore the individual beneficiary, and has paid 'to the estate.' The local statutes, therefore, of New York necessarily control the distribution of the estate. Nor is it the function or within the power of the surrogate to arbitrarily change the class of next of kin from those living at the date of the death of decedent, or to destroy the rights of the widow or of her estate which accrued at the death of the insured. There is no indication in the statute that any other date but the death of the deceased shall fix the class of distributees.''

The case of *In re Sabin's Estate,* 227 N. Y. S. 120, cited by plaintiff in error, holding to the contrary, was reversed on appeal. 228 N. Y. S. 890.

In *Ogilvie's Estate,* 291 Pa. 326 (decided December 5, 1927), the court, in an exhaustive and carefully considered opinion, states at page 330: ''Certificates of this class are not gratuities from the government nor yet ordinary insurance policies, but partake somewhat of the nature of both. It was a venture undertaken for the protection of the soldier and his dependents, and the government might attach thereto such condition as deemed wise. Being untried, it was thought that experience might show the necessity for modifications; hence the government expressly reserved the right to make them. When made they became a part of the original contract. * * * The sole named beneficiary was the father and upon his death under the plain language of the act the unmatured installments were payable to the soldier's estate. This precise question does not seem to have been passed upon by the United States Supreme Court, but it has by numerous state courts who, with practical unanimity, hold that under the Act of 1925, in the absence of a named beneficiary or upon his death, the unmatured installments of insurance belong to the soldier's estate and are distributable as a part thereof.''

Then follows a discussion and approval of the decisions in the cases of *Palmer v. Mitchel,* 117 Ohio St. 87, 158 N. E. 187; *Singer v. Tikalsky,* 192 Wis. 524, 213 N. W. 479; *In re Ryan's Estate, supra; Estate of Fink,* 191 Wis. 349, 210 N. W. 834; *In re Storum's Estate,* 221 N. Y. S. 771; *In Deeble's Estate v. Tepper,* 152 Md. 332, 136 Atl. 536; *Battaglia v. Battaglia* (Texas), 290 S. W. 296; *In re Estate of Pivonka,* 202 Ia. 855, 211 N. W. 246.

The contrary doctrine announced in the case of *Sutton's Ex'r. v. Barr's Adm'r.,* 219 Ky. 543, 293 S. W. 1075, was criticized as follows: ''We are unable to follow the reasoning of this last case. Any general scheme for distribution of the insurance fund may sometimes prove unfortunate. Passing it over to the estate of the dead soldier, in the absence of a designated beneficiary, will probably be found as satisfactory as any method that could be devised. In any event, it is enough that Congress has so provided.''

Construing the act of 1925, the court then stated:

''The latter act was a carefully drawn statute; its language is plain and the presumption is that Congress expressed what it intended. It is an elementary rule of statutory construction that a change of language indicates a change of legislative intent; also that where statutes conflict the later governs; hence as the Act of 1925 is inconsistent with prior statutes, it controls. The later act being complete, we cannot read into it the inconsistent language of prior legislation.

''The distribution of the funds under these insurance certificates is by a governmental agency and not through the courts. When, however, the fund is transmitted to the insured's estate, as here, without limitation, it passes under control of the proper state court and is distributable thereby. We cannot assume, with no suggestion to that effect, that Congress intended to impose upon the state courts the duty of distributing such fund to a certain class in exclusion of others. * * * So, had Congress intended the fund for a certain preferred class, we be-

lieve it would have provided that such disposition be made directly by a governmental agency.

"Again, where a named beneficiary dies, after surviving the insured, it seems clear that the unmatured installments become a part of the latter's estate as of the date of his death, although the time when they will actually be received and the amount thereof is then uncertain. * * * Being a part of the insured's estate and vesting as such at his death, it vests, in the absence of a testamentary disposition, in his then next of kin under the intestate laws."

In *Estate of Singer*, 192 Wis. 524, 213 N. W. 479, decided April 5, 1927, it was there urged as here that the purpose of the insurance was the general protection of the insured and his dependents and that therefore those within the permitted class should take as against outsiders, and that such was the intention of Congress. The court stated at page 527: "The intention of the law-making power must be ascertained from the language used to express that intention, and it is only when the language used is uncertain, indefinite, or ambiguous that resort may be had to construction. Here the language of the act is perfectly plain—the remainder of the fund is to be paid to the estate of the deceased. Hence there is no room for the application of rules of construction. The intent of the law-making power is that which is found clearly expressed in the language used in the act. Whether it be considered, as said in the White case, supra, that the contract be a contract of insurance or a pension, or partake somewhat of both, its disposition in the event of death is clearly indicated. Immediately upon the death of the insured the title to his estate vested in his heirs."

See also *Battaglia v. Battaglia, supra; Condon v. Mallan*, 58 D. C. 371, 30 Fed. (2d) 995; *Robbins, Petitioner*, 126 Me. 555, 140 Atl. 366; *In re Storum's Estate, supra; Trust Co. v. Brinkley*, 196 N. C. 40, 144 S. E. 530; *McDaniel v. Sloan*, 157 Tenn. 686, 11 S. W. (2d) 894; *Wood-*

*worth v. Tepper,* 152 Md. 332, 136 Atl. 536; *Estate of Fink, supra; Whaley v. Jones,* 152 S. C. 328, 149 S. E. 841; *In re Smallwood's Estate,* 156 Tenn. 222, 300 S. W. 572; *National Union Bank v. McNeal,* 148 S. C. 30, 145 S. E. 549; *Deeble's Estate v. Tepper, supra.*

Expressing the contrary view are the following cases: *Sutton's Ex'r. v. Barr's Adm'r., supra; In re Estate of Hallbom,* 179 Minn. 402, 229 N. W. 344, approved in *In re Harris Estate,* 179 Minn. 450, 229 N. W. 781 and in *In re Cross' Estate,* 152 Wash, 459, 278 Pac. 414, a decision on rehearing reversing the original opinion of the court found in *In re Cross' Estate,* 147 Wash. 441, 266 Pac. 711.

We are of opinion that the construction of the amendment of 1925 in the three last mentioned cases is clearly erroneous.

As repeatedly stated in the other cases cited above, the wording of the statute is plain and unambiguous and under such circumstances it is undoubtedly the duty of the court to give effect to its intendment, namely: ''if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable * * *.'' The statute does not say that the balance of insurance shall be paid to the administratrix of the estate of the insured to be distributed only to those within the permitted class entitled to take. It does not say that those entitled to distribution of the money paid into the estate shall receive such as beneficiaries and not as heirs at law of the insured. It does not say that the payment to the estate shall be considered merely procedural. In other words, such construction adopted by the court in the three last mentioned cases operates as judicial legislation, the effect of which is to distort the apparent clear intent of Congress. The act must be given the construction patently manifested as hereinabove indicated.

■ 2. Plaintiff in error's second contention is that Congress does not possess the power to divert the payment of installments which had accrued and which were unpaid. There were no unpaid installments which had accrued prior to the death of Patrick McQuade. Upon his death, under the law of 1925, installments ceased to be payable and none could accrue thereafter. Upon the death of the beneficiary, subsequent to the death of the insured, the estate of the insured, pursuant to the law of 1925, received in a lump sum the then value of the monthly installments remaining unpaid, and since no award was theretofore made pursuant to the amendment of 1924, and since the act of 1925 is retroactive as of October 6, 1917, the contention of plaintiff in error is untenable.

The judgment of the district court is right and accordingly is affirmed.