## Mason's Administrator v. Mason's Guardian et al.

## Mason's Administrator et al. v. Mason's Administrator. et al.

(Decided May 22, 1931.)

C. E. RANKIN for appellant Sherman Mason's Administrator.

C. C. BAGBY for appellant John Mason's Administrator.

209

B. R. MOORE for appellant Flossie Mason's Guardian.

ROY E. GRAVES for appellee St. Bank & Trust Co.

R. L. BLACK and C. C. BAGBY for appellee John Mason's Administrator.

BACON R. MOORE for appellee Flossie Mason's Guardian.

C. E. RANKIN for appellant Sherman Mason's Administrator.

C. E. RANKIN for appellee Sherman Mason's Administrator.

ROY E. GRAVES for appellee Tusco and Nannie Mason's Guardian.

Opinion of the Court by Drury, Commissioner—Reversing.

These two appeals are prosecuted on the same record, they are from the same judgment, relate to the same subject-matter, and we shall dispose of them in one opinion.

These appeals involve the distribution of $5,887, the balance of the proceeds of a policy of war risk insurance written by the United States government upon the life of Sherman Mason, a soldier in its service in the World War.

The soldier entered the service on the —————— day of ————, 1917. He died in the service on the 9th of October, 1918, unmarried, intestate, and without issue. His age at date of his death does not appear. The soldier's mother, Ellen McClure Mason had died on the —————— day of ————, 1905. The soldier had named his maternal grandmother, Sidney McClure, as his beneficiary, but she died intestate as to her personal property on March 19, 1918, and after her death the soldier failed to name another beneficiary. Sam McClure, the maternal grandfather of the soldier died intestate on ———— day of ————, 1919.

John Mason and Ellen McClure had married on the ———— day of ————, 1—, and several children were born to them, all of whom died in infancy and prior to the death of the soldier, and while not explicitly stated, the pleadings indicate all these died before their mother, Ellen McClure Mason.

John Mason, after the death of Ellen McClure Mason, married Elizabeth Cornish on the ———— day of ———— 19—, and to them several children were born. Of these children, Tusco Mason, who was born on the ———— day of ———— 19—, and Nannie Mason,

who was born on the ———— day of ————, 19—, still survive, but the other children of John and Elizabeth Cornish Mason all died, in infancy, unmarried and without issue.

After the death of Elizabeth Cornish Mason and on the ———— day of ————, 19—, John Mason married Leona Cornish, from whom he was thereafter divorced on the ———— day of May, 1928. John Mason thereafter died on the ———— day of ————, 1928, intestate, and left three children, him surviving, viz., the above-named Tusco Mason and Nannie Mason, the children of his second marriage, and Flossie Mason, the child of his third marriage. Whether or not John Mason contracted a fourth marriage and left a widow him surviving does not appear.

We have had before this court eight cases involving this war risk insurance, viz.: Sutton's Ex'r v. Barr's Adm'r, 219 Ky. 543, 293 S. W. 1075; Sizemore v. Sizemore's Guardian, 222 Ky. 713, 2 S. W. (2d) 395; Bailey et al. v. Norman's Adm'r, 228 Ky. 790, 15 S. W. (2d) 1005; Mefford et al. v. Mefford et al., 231 Ky. 127, 21 S. W. (2d) 151; Vest's Adm'r v. Vest et al., 234 Ky. 587, 28 S. W. (2d) 782; Hale's Adm'r v. Taylor, 235 Ky. 435, 31 S. W. (2d) 695; Canada v. Canada's Adm'x, 235 Ky. 747, 32 S. W. (2d) 330; Wilcox v. Schroader's Adm'r, 236 Ky. 112, 32 S. W. (2d) 727.

The applicable federal statutes, where the insurance has not been converted, and this had not, are set out herein. It is well for litigants to keep in mind the different statutes applicable in event the insurance has been coverted. We called attention to this in the Hale Case. Where this insurance has not been converted, the disposition of the present worth of the balance due upon the death of the designated beneficiary should not be a matter of any difficulty.

This sum is a part of the personal estate of the soldier, it is payable to and is receivable by his personal representative, and, with the exception of not being subject to his debts, is to be administered just like any other personal estate of the soldier, just as any cash he may have had on hand, his choses in action, a flock of sheep, a drove of hogs, a herd of cattle, or a stud of horses. Difficulties and confusion will be avoided by keeping in mind what we have just said about the similarity of this fund to the other items of personal property mentioned.

The devolution of such property of an intestate is fixed by section 1403, Ky. Stats. We have called attention to the failure of this record to show the age of Sherman Mason at the date of his death, but that makes no difference, for this statute provides that "the personal estate of an infant shall be distributed as if he had died after full age." This statute further provides that his personal estate (with certain exceptions not involved in this case) "shall pass and be distributed among the same persons, and in the same proportions, to whom and in which real estate is directed to descend."

The devolution of an intestate's real estate is fixed by section 1393, Ky. Stats., and thus we see that, as Sherman Mason had no children or descendants, when he died and as his mother was dead, the ownership of all his property, including this insurance vested in his father, not as his beneficiary, but as his heir at law. That was John Mason, and, when the last breath went out of Sherman Mason, John Mason became the owner of this insurance. It is true John Mason did not collect it all, but that was because the government would not pay it to him at once. He collected it as fast as he could. John Mason's position at the close of the 9th of October, 1918, except as to his son's debts, was the same as if his son had died the owner of 240 notes of $57.50 each signed by a solvent neighbor, due one each month. The administrator of Sherman Mason would have the right to collect these notes, but John Mason would have the right to obtain from him the money so collected. He could not make the neighbor pay these notes, until due, but they would be his just the same, and, if the neighbor offered to pay the present value of them, his receipt for that given to the neighbor would be good. That is what has happened here. The government has paid $5,887 to the soldier's administrator; if John Mason were alive, he would be entitled to this money, but, as he is dead, his administrator is entitled to it.

Whether the heirs of the soldier are to be determined as of the date of the death of the soldier or as of the date of the death of the beneficiary, as stated in Sutton's Ex'r v. Barr's Adm'r, supra, is not involved here, the beneficiary Sidney McClure having died before the soldier. Hence that question is not determinable on this appeal. The estate of John Mason would take this fund under either rule. The holding of other jurisdictions,

and a later one of this, is that the date of the soldier's death is controlling. Condon v. Mallan, 58 App. D. C. 371, 30 F. (2d) 995; Perrydore v. Hester, 215 Ala. 268, 110 So. 403; Chliders v. Pollock, 178 Ark. 1031, 13 S. W. (2d) 8; In re McQuade's Estate (Colo. Sup.) 296 P. 1023, Sutton's Ex'r v. Barr's Adm'r, cited and criticised; Magee v. Chambers et al. (Del.) 147 A. 306; Coleman v. Harrison et al., 168 Ga. 859, 149 S. E. 141; Sims et al. v. Arehart, 254 Ill. App. 219; In re Pivonka's Estate, 202 Iowa, 855, 211 N. W. 246, 55 A. L. R. 570; Mefford v. Mefford, 231 Ky. 127, 21 S. W. (2d) 151; Robbin's Petition, 126 Me. 555, 140 A. 366; Woodworth v. Tepper et al., 152 Md. 332, 136 A. 536, 55 A. L. R. 578; In re Dempster's Estate, 247 Mich. 459, 226 N. W. 243—in this opinion Sutton's Ex'r v. Barr's Adm'r is cited but not followed; In re Hallbom's Estate, 179 Minn. 402, 229 N. W. 344—in this opinion Sutton's Ex'r v. Barr's Adm'r, is cited, but not followed; this judgment was reversed by the United States Supreme Court April 13, 1931, Pagel v. MacLean, 51 S. Ct. 416, 75 L. Ed. —, upon another feature; Williams et al. v. Eason's Adm'r, 148 Miss. 446, 114 So. 338, 55 A. L. R. 574; Gunn v. Yancey (Mo. App.) 33 S. W. (2d) 1029; In re Ryan's Estate, 220 App. Div. 835, 222 N. Y. S. 891; Branch Banking & Trust Co. v. Brinkley, 196 N. C. 40, 144 S. E. 530; Funk v. Luithle, 58 N. D. 416, 226 N. W. 595, in this opinion Sutton's Ex'r v. Barr's Adm'r is cited but not followed; Palmer v. Mitchell Adm'r, etc., 117 Ohio St. 87, 158 N. E. 187, 55 A. L. R. 566; In re Ogilvie's Estate, 291 Pa. 326, 139 A. 826, Sutton's Ex'r v. Barr's Adm'r is cited and criticised in this opinion; National Union Bank, etc., v. McNeal et al., 148 S. C. 30, 145 S. E. 549, Sutton's Ex'r v. Barr's Adm'r is cited in a dissenting opinion; McDaniel v. Sloan, 157 Tenn. 686, 11 S. W. (2d) 894; Turner et al., v. Thomas et al. (Tex. Civ. App.) 30 S. W. (2d) 558, Sutton's Ex'r v. Barr's Adm'r cited and criticised; Price v. McConnell et al., 153 Va. 567, 149 S. E. 515; Watkins v. Hall, 107 W. Va. 202, 147 S. E. 876; Singer v. Tikalsky, 192 Wis. 524, 213 N. W. 479. A valuable note of 56 pages will be found in 55 A. L. R. page 580.

There is one case somewhat discordant to which we will call attention. The disposition of the insurance upon the life of LeRoy W. Cross, a soldier killed in France, October 22, 1918, gave the court of Washington considerable trouble. The soldier died unmarried,

intestate, and without issue, survived by his father and mother, who were his heirs, and his mother was his beneficiary. The father died and willed everything to the mother. In 1926 the mother died and willed her estate to her children. The government paid the $6,983 balance to the administrator of the soldier. In Cross's Estate, 147 Wash. 441, 266 P. 711, it was held this fund should be paid to the executor of the mother. A similar decision was made in Re Estate of Margaret Cross, 147 Wash. 699, 266 P. 712, and it was held this fund was subject to inheritance tax. On rehearing that opinion was adhered to: see Id., 148 Wash. 422, 269 P. 339. On further rehearing of both cases the court decided the heirs of the soldier at the death of his mother were entitled to this fund, and cited Sutton's Ex'rs v. Barr's Adm'r, but rested its decision, not on it, but the court held they took, this, not by inheritance from their mother or the soldier, but as beneficiaries under his certificate. How such a conclusion could be reached is difficult to understand, but there it is. See In re Cross' Estate, 152 Wash. 459, 278 P. 414.

In the case of Mefford v. Mefford, 231 Ky. 127, 21 S. W. (2d) 151, we sustained a demurrer to the petition, because it did not show the soldier's mother had died intestate. If the soldier's death were not the controlling date, we would not have said that, for the mother would have had nothing to will if the death of the beneficiary were the controlling date. Her right as beneficiary ceased when she died. Cassarella v. U. S. (D. C.) 271 F. 486; Id. (C. C.) 279 F. 396; Salzer v. U. S. (D. C.) 300 F. 764, and Id. (C. C. A.) 300 F. 767. Her right as an heir of the soldier, if he died intestate and without issue, did not, and what she took in this capacity was a part of her personal estate which she could devise to whom she saw fit. She had nothing as a beneficiary she could will to any one. This Mefford opinion is entirely sound, and nothing was said in it inadvertently.

In this case the administrator of the soldier has received from the United States government $5,887 and has brought this suit under the Declaratory Judgment Act, sections 639a-1 to 639a-12, inclusive, of the Civil Code of Practice, to obtain the advice of the chancellor relative to its disposition. Many claimants of the fund have appeared: (a) R. L. Black, as administrator of John Mason, claims this entire fund as due and payable

to him as a part of the estate of John Mason. (b) The guardian of Nannie Mason and Tusco Mason claims this money as payable directly, entirely, and exclusively to it as such guardian, because its wards were at the death of John Mason the nearest living heirs at law of the soldier, they being his half-brother and half-sister. They seek to exclude Flossie Mason, because she had not then been born. (c) The children and descendants of Sam McClure have made a claim for this fund, their claim being rather idefinite and vague, but most earnestly asserted. (d) The guardian of Flossie Mason has claimed this fund as due and payable directly to him and to the guardian of Nannie Mason and Tusco Mason, he to have one-third as guardian of Flossie Mason, and the guardian of Nannie Mason and Tusco Mason to take the other two-thirds thereof.

The cause was submitted, the court sustained claim (b), and ordered this fund to be paid directly and entirely to the guardian of Nannie Mason and Tusco Mason, the other parties to the litigation excepted, and our first appeal is prosecuted by the administrator of the soldier. The second is a joint appeal prosecuted by the administrator of John Mason and the guardian of Flossie Mason.

The court erred in awarding this fund to claimant (b), his award should have been to claimant (a), the administrator of John Mason.

The original War Risk Insurance Act was approved September 2, 1914 (38 Stat. 711).

This act was very limited in its scope and has no present application. It was amended by an Act approved October 6, 1917 (40 Stat. 398). Under article 4, in section 402 of this amendment (40 Stat. 409), it was provided (in copying these we have italicized certain parts for purpose of illustration):

### Act of 1917.

"If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, *the insurance shall be payable to such person or persons, within the permitted class of beneficiaries as would*

*under the laws of the State of the residence of the insured, be entitled to his personal property in case of intestacy.''*

This permitted class then was: ''The insurance shall be payable only to a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law, or sister-in-law, or to any or all of them and also during total and permanent disability to the injured person.'' 43 Stat. 624, sec. 300 (38 USCA, sec. 511.)

Under sections 1403 and 1393 of Ky. Stats., John Mason, upon the death of Sherman Mason, became entitled to this insurance, not as a beneficiary under the insurance contract, but as the heir of the soldier, and accordingly the government began paying him $57.50 per month. This act was amended June 25, 1918, see 40 Stat. at L. 609, 615, sec. 21, and again amended on December 24, 1919; see Acts 66th Congress, 2d Session, c. 16, 41 Stat. p. 371. By the amendment of Dec. 24, 1919, it was provided:

### Act of 1919.

''Sec. 15. That if any person to whom such yearly renewable term insurance has been awarded dies or his rights are otherwise terminated after the death of the insured, but before all of the two hundred and forty monthly installments have been paid, then the monthly installments payable and applicable shall be payable to such person or persons within the permitted class of beneficiaries as would under the laws of the State of residence of the insured, be entitled to his personal property in case of intestacy; and if the permitted class of beneficiaries be exhausted before all of the two hundred and forty monthly installments have been *paid, then there shall be paid to the estate of the last surviving person within the permitted class the remaining unpaid monthly installments.''* 41 Stat. 376.

It was again amended on June 7, 1924, see Acts of 68th Congress, 1st Sess., c. 320, 43 Stat. p. 607 (38 USCA, sec. 421 et seq.), but this amendment is not involved here.

On March 4, 1925, it was still further amended (43 Stat. 1302), so that the section in which we are now interested reads thus, certain parts thereof being italicized by us for purpose of illustration:

Acts of 1925.

"Sec. 303. If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award: *Provided, That all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this act shall continue until the death of the person receiving such payments, or until he forfeits same under the provisions of this Act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance so awarded to such person;* Provided further, That no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment: Provided further, that in cases when the estate of an insured would escheat under the laws of the place of his residence insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917." 38 USCA, sec. 514.

Therefore the government under the italicized part of this act continued after the passage of it to pay this insurance to John Mason at the rate of $57.50 per month, as the soldier's heir not as his beneficiary, and when John Mason died then the government paid the present worth of the unpaid installments to the soldier's administrator, and the first question is: What shall this administrator do with it? The answer is: Pay it to the administrator of John Mason. Then comes the second question: What shall the administrator of John Mason

do with it? The answer is: Distribute it as any other part of the personal estate of John Mason should be distributed.

First there should be a showing whether or not John Mason, after his divorce from Leona Cornish Mason, contracted a fourth marriage and died leaving a widow him surviving. If he did, his widow takes a portion of this fund under section 2132, Ky. Stats., and subsection 5 of section 1403, Ky. Stats., and Nannie Mason, Tusco Mason and Flossie Mason take the remainder under section 1403 and section 1393, Ky. Stats. If John Mason was a single man when he died, then these three children take all of this, under section 1403 and section 1393, Ky. Stats., and it should be paid to their guardians. Of course, what any one takes is subject to the fees and cost of administration.

Going back now to that part of the act of 1925 immediately following the part we have italicized, we will take up and endeavor to show that it has no relation to the questions here. Under the provision of the act of 1917 which is the same as the second provision copied in Sutton's Ex'r v. Barr's Adm'r, when the designated beneficiary was dead, the payments were to be made to such one or ones within the permitted class as would under the laws of the state of the residence of the insured be entitled to his personal property in case of intestacy. In this case to John Mason. By Section 15 of the Act of Congress of Dec. 24, 1919, a further provision was added. See part italicized in it. Now it was to take care of a situation existing under the provision just mentioned that the part of section 303 of act of 1925 immediately following the part we have italicized was written. Thus, if, when the soldier died, John Mason had been the last surviving member of the permitted class and he had died before the passage of the act of 1925, the government would have paid this insurance to his estate at the rate of $57.50 per month and would have continued to do so after the passage of the act of 1925, but he did not so die, and hence this part of the act of 1925 has no application here.

The judgment is erroneous. The court will require the parties by further pleading and, if necessary, proof to show the marital status of John Mason when he died and whether or not he left a widow him surviving and will then enter a judgment as indicated.

As this is a proceeding under the Declaratory Judgment Act, the court should have required the parties to manifest the necessary facts before attempting to render a judgment. See Supreme Tent of Knights of Maccabees of the World v. Dupriest, 235 Ky. 46, 29 S. W. (2d) 599.

Judgment reversed on both appeals.

Whole court sitting.