WILLIAMS *et al. v.* EASON.[*]

(Division B. Oct. 3, 1927.)

[114 So. 338. No. 26551.]

ARMY AND NAVY. *Insured under war risk policy had contingent interest in proceeds at time of death which immediately vested in sole surviving heir (World War Veterans' Act 1924, [38 U. S. C. A., section 514], and amendments; Hemingway's Code 1927, sections 1447-1459).*

Under the World War Veterans' Act 1924, section 303 (38 U. S. C. A., section 514 [U. S. Comp. St., section 9127½—303]), and amendments thereto, and law of descent and distribution (Hemingway's Code 1927, sections 1447-1459), insured under contract of war risk insurance had an interest or estate in proceeds of insurance at time of his death, though contingent on death of beneficiary named therein dying before receiving all installments payable under its terms, and such interest after death of beneficiary immediately vested by inheritance in insured's sole heir surviving him.

*Corpus Juris-Cyc. References: Army and Navy, 5CJ, p. 370, n. 48, New.

APPEAL from chancery court of De Soto county.

HON. N. R. SLEDGE, Chancellor.

Contest in the matter of the administration of the estate of David J. Williams, deceased, between Strong Williams and others as heirs of deceased, and the heirs of the deceased's widow, for the proceeds of a war risk insurance certificate held by S. W. Eason, administrator. Decree for the heirs of deceased's widow, and the heirs of deceased appeal. Affirmed.

*Logan & Barbee,* for appellant.

This insurance money can be paid only to a person or persons within the permitted class as fixed by the acts of Congress and to those only who would inherit from the insured in this state because the insured died intestate. *Bean* v. *U. S.,* 7 Fed., 2d., 393; *Fleming et al.* v. *Grimes,* 107 So. 420 (Miss.).

We refer also to *Helmholz et al.* v. *Horst et al.,* 294 Fed. 417, where the insured named no beneficiary in his application for insurance, but by his will named his aunt as his beneficiary and under the law at that time she was without the permitted class. The insured died and his half-brother and half-sister drew the monthly installments until December 31, 1920. The law having been changed putting the aunt within the permitted class of beneficiaries, she successfully brought suit for the installments falling due after that date. See, also, *Meisner* v. *U. S.,* 295 Fed. 866; *Richmond* v. *U. S.,* 6 (2d) Fed.

143; *Sturgess et al.* v. *Sturgess et al.,* 12 L. R. A. (N. S.)
1014.

From the foregoing it will be seen that in the case at
bar, David J. Williams, the insured, did not die seized
and possessed of this insurance in the sense that it would
descend as his property in the state of Mississippi. Sec-
tion 1385, Hemingway's Code; *U. S.* v. *Law,* 299 Fed. 61;
*Cassarello* v. *U. S.,* 271 Fed. 486; *Cassarello* v. *U. S.,* 279
Fed. 396; *Elliott* v. *U. S. et al.,* 271 Fed. 1001; *Salzer* v.
*U. S.,* 300 Fed. 764, 767; *Carson et al.* v. *Vicksburg,* 22
So. 1; *Shelton* v. *Minnis,* 54 So. 114 (Miss.); *Sykes* v.
*Armstrong,* 71 So. 262 (Miss.); *In Re Storum's Estate,*
218 N. Y. S. 394.

It is clear to our mind that as the beneficiary has no
vested interest in the policy until after the death of the
insured because the insured could and might change the
beneficiary, then it is equally clear and certain that
no one to whom the policy finally becomes payable has
a vested interest in it until at the time and after the
money actually comes into his or her hands. If the form-
er is true, then the latter is bound to be true. In the
case at bar the administrator did not receive the check
from the government until two days after the death of
the widow of the insured and it necessarily had to take
several days after that before the check got back to its
source and cleared there.

It is clear to us that the insured intended for his mother
to have the benefit of this insurance because he named
her as the beneficiary therein and afterwards married
and did not change the beneficiary which he could have
done and named his wife, his brothers-in-law or sis-
ters-in-law as beneficiary therein. His mother having
died and by a subsequent act of Congress, the unpaid
balance upon the happening of certain events became
payable to the estate of the insured and was paid to
this estate long after the death of the widow of the in-
sured. Not being something that the insured died pos-
sessed of and not coming into his estate until long after
the death of the insured, it cannot go to the heirs of one

who if she had been living and received the money would have been entitled to it, but it must go to those living who would inherit the estate of the insured, the blood relations.

*Dinkins & Wilroy,* for appellee.

It was the opinion of the chancellor and his decree is to the effect that the disposition of the fund involved is to be determined by the statutes and laws of this state governing the distribution of intestate property under our inheritance laws, as directed by the director of the Veterans' Bureau.

There is no room for controversy as to what disposition should be made of this fund if it had been derived through an ordinary policy of insurance or if it represented a part of the estate of a decedent. The question as to whether or not distribution of an estate is to be made as of the time of the death of the intestate or as of the time of the distribution of his estate is definitely settled in *Thompson* v. *Thompson,* 30 Miss. 152.

It must be conceded that Congress in dealing with persons can determine the conditions upon which it will be obligated to pay out money. The War Risk Insurance Act is an example of the exercise of such authority. Congress had the power to say who should and who should not benefit by the provisions of that act . It could limit the authority of the insured in naming his beneficiary and, in the absense of proper designation, it could say to whom the proceeds of the policy should be paid, but after payment the authority of Congress ended; and whether the payment be made to the person entitled thereto or not, the person receiving the payment is free from the influence of the acts of Congress unless the government should see fit to proceed to recover the sum as erroneously paid to the recipient. If payment is made by the government, whether properly or improperly, it cannot influence or determine to whom it shall pass at the death

of the person who receives it.  See *Nutt* v. *Forsythe,* 84 Miss. 211; *Law* v. *Lay,* 118 Miss. 549.

There is no call here to determine to whom the balance due on the policy should have been paid by the government.  It has been paid.  Its last word has been spoken and its last decision has been rendered.  The government promised to pay upon the conditions existing here to the "Estate of the Insured;" and that ended, there can be no controversy with the government.  The voice of Congress is hushed and this court must speak its own language and by its own oracles.

Let us suppose that the wife of the soldier were now alive.  In that event no one would question her right to the fund; nor if she had received it in her lifetime, would any one suggest that is would not pass at her death to her heirs.  She did not survive actual receipt of the money by the administrator of her husband's estate, nor did the money ever actually come into her possession, but she survived the decision of the government as to who was entitled to it and also the issuance of the warrant on which it was paid.

ANDERSON, J., delivered the opinion of the court.

This was a contest in the matter of the administration of the estate of David J. Williams, deceased, pending in the chancery court of De Soto county, between his heirs, on the one hand, and the heirs of his widow, D. L. O. Williams, on the other hand, for the proceeds of a war risk insurance certificate held by the deceased at the time of his death, as a soldier of the United States in the World War.  The chancery court decreed the proceeds of the war risk insurance to the heirs of the widow of the deceased.  From that decree the heirs of the deceased appeal to this court.

The cause was tried on agreed facts, in writing, and made a part of the record, the material parts of which follow:

"It is stipulated and agreed that David Jack Williams, deceased, in his lifetime; was a regularly enlisted soldier in the service of the government of the United States during the recent World War, and as such soldier he secured and there was issued to him by the War Risk Insurance Department of the United States, an insurance certificate No. T-3882635, on his life for the sum of five thousand dollars, and that the same became effective August 1, 1918, copy of which is hereto attached, and agreed to be correct.

"That the said David Jack Williams because of disease contracted during the period of his service in the United States Army was awarded permanent disability compensation by the Veterans' Bureau of the War Risk Department, but that no part thereof was paid to him in his lifetime, and that subsequent to his death, which occurred on the 28th day of July, 1920, the said S. W. Eason, as administrator of the estate of the said David Jack Williams, received from the said Veterans' Bureau the sum of one thousand four hundred eighty-six dollars and ninety-four cents, as the disability compensation so awarded, and that he has paid out and distributed the same as shown by his final account filed in this court in cause No. 4710, the files and records of which may be introduced in evidence on the trial of this cause, by any of the parties in interest to such extent as they may be determined by the court to be competent, but it is agreed that after payment of expenses, etc., in the said cause No. 4710, the balance remaining in the hands of the administrator of the said fund was paid to D. L. O. Williams, the widow of the said David Jack Williams.

"It is further agreed that when the said certificate of insurance was issued that the said David Jack Williams was not married, but that, after he was discharged from the army and returned to his home in De Soto county, Miss., he was on the 11th day of September, 1919, married to D. L. O. Garrett, and that she has since died, and that her death occurred on the date hereinafter stated. It is further agreed that the said David Jack Williams

had no children born to him by his said wife, D. L. O. Williams, nor by any former marriage, and that at his death the said D. L. O. Williams (his widow) was his sole heir at law.

"That beside his said wife the said David Jack Williams was survived by his mother, Jennie Williams, his father, Strong Williams, a brother, Joe Williams, and three sisters, Esther Williams, Lenora Williams, and Clara Smith, all of whom, except the said Jennie Williams, are parties to this cause and agreement.

"It is further agreed that the said David Jack Williams died intestate on the said 28th day of July, 1920, in De Soto county, Miss., at the home of his father, and that he was a resident and citizen of De Soto county, Miss., at the time of his death, and that said insurance certificate was then in force, and that his mother, Jennie Williams, who had been designated by him as the sole beneficiary of said insurance and that she survived him and after his death she received from the said Veterans' Bureau thirty-six monthly installments of twenty-eight dollars and seventy-five cents each on said insurance certificate amounting to the sum of one thousand and thirty-eight dollars, and that said payments continued to the time of her death.

"That the said Jennie Williams died intestate on the 24th day of December, 1924, and that she was survived by her husband, Strong Williams, and her children, who are named above as the sisters and brother of the said David Jack Williams.

"That after the death of the said Jennie Williams, the said D. L. O. Williams (widow of the said David Jack Williams), to-wit, on the 4th day of April, 1925, waived her right to appointment as administratrix of her said husband, David Jack Williams, in favor of S. W. Eason, and that he on the 12th day of June, 1925, by proper order of this court, was appointed as the administrator of the said David Jack Williams as shown by the records and files in cause No. 5088 in this court, which said files and records may be introduced in evidence by any of the

parties in interest in this cause to the extent of their competency, etc.

"That under the appointment of the said S. W. Eason as administrator, last aforesaid, he made application to the said Veterans' Bureau for payment of the balance due on the said certificate of insurance, and that on September 16, 1925, there was issued to him by said Veterans' Bureau, check No. 3, 678,368, payable to him as such administrator, in the sum of three thousand nine hundred sixty-two dollars, and that said check was issued during business or office hours, which closed at four thirty p. m., in the city of Washington, on the date aforesaid, and that the same was on said date mailed to S. W. Eason, administrator, and was received by him on the 18th day of September, 1925, and was deposited in De Soto County Bank, and now said money is held there to his credit as such administrator.

"That D. L. O. Williams (widow of the said David Jack Williams) died intestate in Memphis, Shelby county, Tenn., at eight o'clock p. m. on the 16th day of September, 1925. That she left no children and that her sole heirs at law are her mother and father, sisters and brothers, to-wit, Henry Garrett (father), Susie Garrett (mother), Lester Garrett (brother), Leo Garrett Bobo (sister), Lillabell Garrett Echols (sister), Ada Garrett Coleman (sister), James Garrett (brother), Irvin Garrett (brother), Myrtle Garrett (sister), and Raiford Garrett (brother).

"That all of the matters of fact herein stated may be accepted on the trial of this cause as true, and that no further proof thereof shall be required, but that any and all record proof desired by any of the parties in interest may be introduced on the hearing.

"The contention of the parties on the one part is that the fund in the hands of the said administrator, S. W. Eason, should be distributed and paid to the heirs at law of the said D. L. O. Williams, or to the said W. H. Entrikin, her administrator, and on the other part that the said fund should be distributed and paid to Joe Wil-

liams, Esther Williams, Clara Smith, Lenora Williams, and Strong Williams, brother, sisters, and father, respectively, of said David Jack Williams.''

A copy of the war risk insurance certificate, leaving off the name of the director signing the same and the formal indorsements thereon, follows:

''The United States of America.
''United States Veterans' Bureau,
Washington, D. C.
''Duplicate Certificate No. T-3882635.
''Date Insurance Effective August 1, 1918.

''This certifies that David Jack Williams has applied for insurance in the amount of five thousand dollars payable in case of death or total permanent disability in monthly installments of twenty-eight dollars and seventy-five cents.

''Subject to the payment of the premiums required, this insurance is granted under the authority of an act amending 'An act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department, approved September 2, 1914, and for other purposes,' approved October 6, 1917, and subject in all respects to the provisions of such act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract.''

We are of the opinion that the decree of the chancery court should be affirmed.

The turning point in the case is whether or not at the time of his death, David J. Williams had a *vested interest* in the proceeds of the war risk insurance held by him. If he had, under section 303 of the World War Veterans' Act of 1924 (38 USCA, section 514; U. S. Comp. St., section 9127½—303), and amendments thereto, and the Law of Descent and Distribution of this state (Hemingway's Code 1927, sections 1447-1459), that interest was a part of his estate and immediately descended to his wife, who

was then living and his sole heir. We must look also to that section of the World War Veterans' Act to determine whether the insured had a vested interest at the time of his death in the war risk insurance held by him. We do not think the act is open to construction, so far as those questions are concerned. It plainly provides that if the beneficiary named in the insurance certificate "survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable," etc. The insured's mother, who was named beneficiary in the war risk insurance certificate, survived the insured, and died after receiving only thirty-six of the two hundred forty installments payable under the terms of the certificate. If the insured had survived his mother, the beneficiary in the certificate, clearly he would have been the sole beneficiary and entitled to the unpaid installments until another beneficiary was named. At his death, the insured, therefore, had an interest or estate in the proceeds of the insurance. It is true that it was an interest or estate contingent upon his mother, the beneficiary in the certificate, dying before she received all the installments payable under the terms of the certificate. Such contingency, however, did not prevent it from being an interest or estate inheritable by the insured's heirs. It was a part of the personalty belonging to the estate of the insured, and, under the law, his wife, his sole heir, surviving him, immediately became, by inheritance, vested with all his interest therein, as was held in *Thompson* v. *Thomas,* 30 Miss. 152.

We do not think the authorities relied upon by appellants sustain their position. They are not applicable, in our opinion, to the case here. The rights of the parties to this cause are controlled by the World War Veterans' Act of 1924, and amendments thereto, and the Laws of Descent and Distribution of this state; and there is no conflict between the federal act and the laws of descent and distribution of this state.

*Affirmed.*