*H. W. Nalley,* for plaintiff.
*G. L. Hallaway, W. S. Mann, W. S. Mann Jr.,* for defendant.

24549, 24577.  PORTER, administrator, *v.* WATSON, and *vice versa.*

Decided September 16, 1935. Rehearing denied October 4, 1935.

*John B. Gamble, Robert M. Nicholson,* for plaintiff in error. *Cecil R. Hall, W. D. Thomson,* for person at interest, not party. *Tolnas & Middlebrooks,* contra.

MacIntyre, J. ■ Zilphan Allen Watson filed her petition in the court of ordinary of Oconee County against J. Frank Porter, administrator of the estate of Tom Allen, deceased, alleging that she was the next of kin and mother of Tom Allen, that said administrator was in possession of certain moneys belonging to said estate, and that she was entitled to the same. A settlement on accounting was prayed for. Service was acknowledged by the attorney for the administrator, and the twelve months exemption was waived. The defendant answered, that he was in the possession of a certain sum of money, the proceeds of a certain war-risk insurance policy on the life of Tom Allen, and that after payments of debts and costs such sum would be due to be paid to Mamie Allen, the lawful wife of Tom Allen, deceased, she being the sole heir at law of said estate. A trial of this matter before the ordinary resulted in a judgment against the plaintiff, directing that Mamie Allen be paid the proceeds in the hands of the administrator, less the costs and that counsel fees be fixed at a later date. An appeal from this judgment was taken to the superior court. In that court the plaintiff filed an amendment alleging as follows: Tom Allen was inducted into the military service, was sent overseas, and died in France on October 1, 1918. Before his death there were issued to him two policies of war-risk insurance aggregating ten thousand dollars, in which Ed. Creamer was named as beneficiary. (Tom Allen was the illegitimate child of Z. A. Allen, and Ed. Creamer was the putative father.) Monthly payments were made thereunder to Ed. Creamer until the time of his death on March 31,

1932. The value of the policies at that time and the amount collected by the administrator of the estate was $4025. At the time of the death of Tom Allen his mother and his widow were the only persons within the permitted class of beneficiaries. Mamie Allen, the widow of Tom Allen, from October 1, 1922, until April 25, 1923, lived in a state of open and notorious illicit cohabitation with a man named Eddie Roland, in Tennessee. By reason of said conduct Mamie Allen forfeited her right to any and all insurance hereinbefore described, if any she had, after October 1, 1922. Mamie Allen married Eddie Roland on April 25, 1923. The insurance policies provided that in the event of the death of Ed. Creamer prior to the payment of the last of the 240 installments due thereon, "the remaining payments of insurance will be paid to those persons within the permitted class of spouse, child, and grandchild, parent, brother, sister of the deceased soldier, as would, under the laws of the State of his residence, be entitled to his personal property in case of intestacy; provided, however, that if the insured designate an alternate beneficiary, the remaining payments will be paid to such person or persons." The mother became vested with the right to receive the remaining unpaid installments after the death of Ed. Creamer, she being the only person within the permitted class as would, under the law of Georgia, be entitled to the personal property of the deceased in case of intestacy, Mamie Allen having forfeited her right, if any she had, to such fund by reason of her conduct above set out. Certain sections of the Code of State of Tennessee were pleaded in reference to requirements for marriage in that State, the plea setting up that such requirements as to a formal marriage were mandatory and precluded recognition of a common-law marriage. This issue was submitted to a jury, and resulted in a verdict for Z. A. Watson. The administrator's motion for new trial was overruled, and he excepted.

The evidence disclosed that Tom Allen was the illegitimate son of Zilphan Allen. She afterwards married Mose Watson. Tom Allen married Mamie Allen in 1909. They had no children. Ed. Creamer was the father of Tom Allen. Mamie Allen drew compensation from the government at the rate of $25 per month until April 1, 1923. Mamie Allen and Eddie Roland lived together as man and wife in Chattanooga, Tennessee, from October 1, 1922, to April 25, 1923, at which time they were formally married. The

court charged the jury as follows: "The only issue of fact for you to determine in this case is whether or not the widow of the deceased soldier, Mamie Allen Roland, did in fact live in open and notorious illicit cohabitation with another man. Now I charge you that it is not disputed in this case that she was the wife of the deceased soldier, and under the law of Georgia she would be entitled to receive all of his estate, except for a Federal law, and that Federal law says this: The open and notorious illicit cohabitation of a widow who is a claimant shall operate to terminate her right to compensation or insurance from the commencement of such cohabitation. I say if you believe from the evidence in this case that this Mamie Allen Roland did live in open and notorious illicit cohabitation with another man after the death of the soldier, then from the time that she started her illicit cohabitation, her illicit, open, and notorious cohabitation with this other person, from that moment she would not be entitled to recover the estate." The complaint is that this charge was an incorrect statement of the law as applied to the facts of this case; that the right of the widow to share in the fund collected by the administrator is governed by the law of Georgia, and she being the widow, and there being no children, she was the sole person entitled to the fund; that in a suit for accounting and distribution the rights of the heirs are to be determined as of the time of the death of the deceased, and subsequent conduct has no force or effect with reference to the distribution, but the rights are vested as of that date; that the fund belonging to the deceased soldier, derived from the proceeds of the war-risk insurance policy having been paid over by the government to the administrator of the deceased soldier, it became his general estate and was to be administered in accordance with the laws of Georgia; and that the conduct of the wife after the death of her husband did not change the legal status of her inheritable rights.

The court gave other charges which were a reiteration of this same principle, and gave in charge the law of the State of Tennessee which does not recognize common-law marriages as in Georgia, for the purpose of negativing any contention of Mamie Allen that her living with Eddie Roland in Tennessee and holding herself out as his wife made her his common-law wife. The court's charge on this point was evidently predicated upon the act of Congress of September 1914, as amended by the act of 1918, and em-

bodied in Fed. Stat. Ann. Supp. 1918, § 22(5), as follows: "By the testimony of two or more witnesses who know that the parties lived as husband and wife, and were recognized as such, and who state how long, within their knowledge, such relation continued; provided, that marriages except such as mentioned in section 4705 of the Revised Statutes, shall be proved in compensation or insurance cases to be legal marriages according to the law of the place where the parties resided at the time of the marriage or at the time when the right of compensation or insurance accrued; and the open and notorious illicit cohabitation of a widow who is a *claimant* [italics ours] shall operate to terminate her right to compensation or insurance from the commencement of such cohabitation." By an act of Congress approved March, 1925, it is provided: "If no beneficiary within the permitted class be designated by the insured as beneficiary for the converted insurance granted under the provisions of article four of the war-risk insurance act or title 111 of this act, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments; or if the designated beneficiary survives the insured and dies before receiving all the installments of converted insurance payable and applicable, then there shall be paid to the estate of such insured the present value of the remaining monthly installments." Section 303 of the war-veterans act of 1924, as amended by the act of 1925 (43 Stat., part 1, 1310) contains practically the same provisions. It is provided in such act that when any person (a named beneficiary) to whom such insurance is being awarded dies or forfeits his rights to such insurance, then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of such insurance.

The question now presents itself: Does the death of a named beneficiary in a war-risk insurance policy, in a case where the insured has not named any one, either in the policy or by will, to receive the unpaid payments, vest the title and right to distribution in the present value of such insurance in the estate of such deceased soldier, subject to be administered by the laws of the State in which he lives; or does the law of the United States still determine the rules of distribution which are to be applied by the

administrator of such estate? The courts of this State have recognized and cited the rule that under the war-risk insurance act, "where the beneficiary dies before receiving all of the installments of the war-risk insurance, the remainder 'shall be paid to the estate of the insured,' . . and his administrator can collect it." *Coleman* v. *Harrison*, 168 *Ga.* 859 (149 S. E. 145); *Tolbert* v. *Tolbert*, 41 *Ga. App.* 737 (2) (154 S. E. 655), and cit. In *Geiger* v. *Elmore*, 48 *Ga. App.* 314 (172 S. E. 749), the same ruling was followed. It was said: "Under this act, 'where the beneficiary dies before receiving all of the installments of the war-risk insurance, the remainder shall be paid to the estate of the insured, . . and the heirs or distributees must be ascertained as of the date of the insured's death.'" In that case the widow of the deceased beneficiary (who was also the stepmother of the insured), notwithstanding her care and nurture of the insured from infancy like a natural son, was held not legally entitled to the fund as against the administrator of the estate of the deceased insured. In *White* v. *Roper*, 176 *Ga.* 180 (167 S. E. 177), it was said: "Where the beneficiary of a war-risk insurance certificate survives the insured but dies before receiving all the installments which are payable and applicable, the estate of the insured is wholly substituted as the payee, and all such payments become assets of the estate of the insured upon the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the State of his residence, such heirs to be determined as of the date of his death and not as of the date of the death of the beneficiary." Justice Bell, in discussing this principle in that case said: "While there may be decisions to the contrary, the United States Supreme Court which is the final authority in such cases, recently held that where the beneficiary of a war-risk insurance certificate survives the insured but dies before receiving all of the installments which are payable and applicable, the estate of the insured is 'wholly substituted as the payee, and that all such payments become assets of the estate of the insured upon the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the State of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary.' Singleton v. Cheek, 284 U. S. 493 (52 Sup. Ct. 257, 76 L. ed. 419, 81 A. L. R. 923)."

There being no issue of the marriage of Tom Allen, the deceased soldier, and his wife, Mamie Allen, she was the sole heir at law of his estate (Code of 1933, § 113-903) at the time of his death in October, 1918, and her rights as such heir were fixed as of that date, and her subsequent conduct had no effect on her claim as an heir of the estate of Tom Allen deceased. See White *v.* U. S., 270 U. S. 175 (46 Sup. Ct. 274), and U. S. *v.* Barker, 70 Fed. (2d) 1002, where in his opinion Judge Sibley pointed out that claimants of such insurance have no vested rights therein, and, until actual payment, the benefits of the insurance are by its terms subject to change and control by Congress. When the United States government has paid out the amounts due on these policies, no further control is held or had over them. In the present case the full amount due on the war-risk certificate on the life of Tom Allen was paid to his administrator. There is no provision that such fund which then becomes a part of the corpus of the estate of Tom Allen should be distributed other than in accord with the laws of inheritance of this State. This being true, the rights of Mamie Allen in the estate of Tom Allen became vested at the time of his death in 1918, and her subsequent misconduct does not defeat her right as an heir at law in this State. Such is the holding in other jurisdictions. See Palmer *v.* Mitchell, 117 Ohio St. 87 (158 N. E. 187); Williams *v.* Eason, 148 Miss. 446 (114 So. 338, 55 A. L. R. 574). It was therefore error to submit the question of the subsequent conduct of the wife to the jury. We recognize the principle, as stated in *Hunt* v. *Slagle,* 45 *Ga. App.* 470 (165 S. E. 287), that where the remaining unpaid installments at the death of a beneficiary named are paid to the administrator of the deceased soldier in a lump sum, an heir at law of the deceased soldier "takes as a beneficiary under the policy, and his share in the proceeds is not subject to garnishment issued on a judgment obtained against him;" and also that "where war-risk insurance becomes payable to the estate of a deceased soldier, the proceeds are not assets of the estate as such, but the estate is a mere conduit for the payment of the fund to the persons designated by the Federal statute." The language there used, if extended to apply in a case with the facts as those of the present case, would be clearly in conflict with the decisions of the Supreme Court of this State in the case cited above, as well as the decisions of this court. It will be noted that

the decision in *Hunt* v. *Slagle* was based on the decision in *Payne* v. *Jordan,* 152 *Ga.* 367 (110 S. E. 4), which ruling was followed in *Rucker* v. *Merck,* 172 *Ga.* 793 (159 S. E. 501), and *City of Atlanta* v. *Stokes,* 175 *Ga.* 201 (165 S. E. 270). These decisions were not unanimous, and for that reason were not expressly overruled, but were not followed; and a contrary rule was adopted and followed by the Supreme Court in *City Council of Augusta* v. *Ransom,* 179 *Ga.* 180 (175 S. E. 497), which was bottomed on the decision in Trotter *v.* Tennessee, 290 U. S. 354 (54 Sup. Ct. 138, 78 L. ed. 128); Singleton *v.* Cheek, 284 U. S. 493 (52 Sup. Ct. 257, 76 L. ed. 419, 81 A. L. R. 923); 70 Fed. (2d) 1002.

After the motion for new trial had been filed by the administrator of Tom. Allen, a motion was made to dismiss it; and there is also a motion to dismiss the writ of error in this court, on the ground that the administrator is not the party concerned, in the outcome of the case, but is only a stakeholder, and was not aggrieved by the rulings and judgment of the court. It will be recalled that the case arose by reason of a citation filed ·against the administrator by the defendant in error, for a settlement. The ordinary had authority to settle finally between the distributee and the administrator. Code of 1933, § 113-2202, *Cook* v. *Weaver,* 77 *Ga.* 9 (15). No pleading was necessary on the part of the administrator for him to show that the mother was not entitled to participate in the estate. Under the Code of 1933, § 113-2202, either party to this proceeding is given the right of appeal. The wife, although she was present at the time, was never made a party to the proceedings; and while she was a proper party, she was not a necessary party, and, not having been made a party, would have had no right to appeal from the judgment of the ordinary. It is the duty of the administrator, if he can, to have the rights of the parties determined. This was a proceeding by one heir against the administrator. It was in effect a suit against him for the possession of the estate. It was not a proceeding in which the administrator had cited all of the heirs and distributees to a settle-· ment and where they were all made parties. The title to the proceeds of the insurance policy vested in the administrator as representative of the estate of the deceased, and it was his duty to see that no judgment was rendered awarding the fund to a party who had no right thereto. See discussion in *McGregor* v. *Third Na-*

*tional Bank of Atlanta,* 124 *Ga.* 557 (53 S. E. 93). It will be noted that under a like circumstance an administrator was a party in the cases of *Tolbert* v. *Tolbert, Coleman* v. *Harrison,* and *White* v. *Roper,* supra. We do not think that the motion to dismiss upon the ground that there was no proper plaintiff in error is meritorious.

◼ Six days after the judge had certified the main bill of exceptions in this case, the defendant in error presented a motion to have additional parts of the record sent up. In the record so sent the judge states that after the amendments set out in the statement of facts above had been offered, counsel for the administrator objected orally thereto "on the ground that the right of Mamie Allen Roland, the widow of the deceased, to the insurance money in question is governed and fixed by her status as of the date of death of the insured, under the laws of descent and distribution of Georgia; and that the conduct of the widow thereafter could not divest her right to the fund," that this objection was overruled, and that the law of the case therefore became fixed by such ruling, and no exceptions pendente lite were taken. We do not think this court can consider this part of the matter certified to by the trial judge. It was a statement of a happening in the presence of the court, and might have been certified in the original bill of exceptions, but was not a part of the record in the case. In *Jones* v. *Gill,* 121 *Ga.* 93 (48 S. E. 688), it was said: "After a bill of exceptions has been certified, the defendant in error can not have additional evidence or other matter sent to this court, except such as is a part of the record and of file in the office of the clerk." Moreover, the citation for settlement was all the pleading necessary in this case. *Brantley* v. *Greer,* 71 *Ga.* 11 (2).

◼ We can not agree with the contention that the court of ordinary, and therefore the superior court, on appeal, was without jurisdiction of the case. Under the Code of 1933, § 24-1901, the court of ordinary is expressly given jurisdiction over the distribution of deceased persons' estates. The ordinary may probate, but not construe a will. But to hold that in a citation for settlement he may not pass an order, because "an intricate question of law may be involved," would in all cases where such question is made take away the jurisdiction of his court to pass upon the matter. To do this would nullify the plain provisions of the Code section. In *Cook* v. *Weaver,* 77 *Ga.* 9, it was held, following the decision of

*Drane* v. *Beall,* 21 *Ga.* 21, that a court of ordinary could not construe a will, and that the "same reasoning applies as fully to the settlements of accounts by the ordinary, *when the construction of wills* [italics ours] is before him." To apply this principle, as insisted by counsel in this case, would take away the jurisdiction of the court of ordinary in all cases involving questions of law. What are "intricate questions" is sometimes largely a matter of opinion.

In view of what has been said, it is not necessary to pass upon the other assignments of error.

*Judgment reversed on the main bill of exceptions. Cross-bill dismissed. Broyles, C. J., and Guerry, J., concur.*